**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company,<br><br>        Plaintiff,<br>vs.<br><br>Sechel Holdings, Inc. d/b/a Ergogenix, a Delaware corporation; 7129211 Canada, Inc., a Canadian Corporation; Sci Labs Nutraceuticals, Inc., a California corporation<br><br>        Defendants. | No. 11-CV-01256-PHX-PGR<br><br><br><br>**ORDER** |

Before the Court are Plaintiff ThermoLife's motions for entry of default judgment. (Docs. 23, 24.) The Court held a default damages hearing on March 13, 2012. For the reasons set forth herein, the Court will enter default judgment, award damages, and grant a permanent injunction.

**BACKGROUND**

On June 24, 2011, ThermoLife filed a complaint alleging patent infringement, inducement of patent infringement, and contributory patent infringement under 35 U.S.C. § 271(a)–(c), and seeking injunctive relief and damages. (Doc. 1.) At issue is ThermoLife's "074 Patent," which protects amino acid compounds, including creatine nitrate. Defendants are Sechel Holdings, Inc., and 7129211 Canada, Inc., which do business collectively as

Ergogenix (hereinafter "Ergogenix"), and Sci Labs Nutraceuticals, Inc. ("Sci Labs"). Defendants were served with process. They did not answer the Complaint and have not otherwise appeared in the matter. After default was entered, ThermoLife moved for default judgment and for a hearing to determine damages under Rule 55(b) of the Federal Rules of Civil Procedure.

### **DEFAULT**

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." After a default has been entered and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on the plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

Granting default judgment is within the Court's sound discretion. *See Albade v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising that discretion, the Court may consider such factors as the possibility of prejudice to the plaintiff, the merits of the substantive claim, the sufficiency of the complaint, the sum of money at stake, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). A plaintiff is required to prove all damages sought in the complaint.

Rule 55(b)(2) provides that a court may conduct a hearing when necessary to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. The Court held such a hearing on March 13, 2012. ThermoLife's President and Chief Executive Officer, Ron Kramer, testified.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court, having reviewed the filings and motions in the matter and received evidence at the hearing held on March 13, 2012, enters the following findings of fact and conclusions of law.

**Findings of Fact:**

1. ThermoLife is an Arizona limited liability company. (Doc. 1, ¶ 7.) Its principal place of business is 3914 E. Chandler Blvd, Phoenix, Arizona 85048. (*Id.*)

2. Defendant Sechel Holding Corp. does business as Ergogenix. Sechel Holding Corp. is a Delaware corporation. (*Id.*, ¶ 8.) Its principal place of business is 11029 Olin Avenue, Omaha, Nebraska, 68144-4933. (*Id.*)

3. Defendant 7129211 Canada, Inc., also does business as Ergogenix. (*Id.*, ¶ 9.) Its principal place of business is 1320 State Route 9 #55202, Camplain, New York 12919. (*Id.*)

4. Defendant Sci Labs is a California corporation. (*Id.*, ¶ 12.) Its principal place of business is 17809 Gillette Avenue, Irvine, California 92614. (*Id.*)

5. Defendants Ergogenix and SciLabs market, sell, and ship their products nation-wide, include in Arizona. (*Id.*, ¶¶ 10, 11, 13, 14.)

6. Sci Labs was served with process on June 29, 2011. (Doc. 7.)

7. Sechel Holdings Inc. was served with process on July 5, 2011. (Doc. 11.)

8. 7129211 Canada Inc. was served with process on July 21, 2011. (Docs. 15, 16.)

9. ThermoLife requested that the Clerk enter default against SciLabs on July 25, 2011, and the Clerk entered default on July 26, 2011. (Doc. 10.)

10. ThermoLife requested that the Clerk enter default against Sechel Holdings on July 27, 2011, and the Clerk entered default on July 28, 2011. (Doc. 13.)

11. ThermoLife requested that the Clerk enter default against 7129211 Canada on October 14, 2011, and the Clerk entered default on October 18, 2011. (Doc. 20.)

12. On September 1, 2011, the Court entered an Order setting a hearing on

October 25, 2011, in order for ThermoLife to present testimony and evidence regarding the amount of any judgment against Sci Labs. (Doc. 14.)

13. On October 14, 2011, ThermoLife filed its Default Hearing Memorandum. (Doc. 18.)

14. At the October 25, 2011, hearing, the Court determined that it was proper to hold a hearing where default against all parties could be decided at the same hearing.

15. On February 1, 2012, the Court set a hearing for March 13, 2012, to determine the amount of any default judgment against Defendants. (Doc. 28.)

16. ThermoLife filed its Supplemental Default Hearing Memorandum and Proposed Findings of Fact and Conclusions of Law on March 6, 2012. (Docs. 29, 31.)

17. ThermoLife is a dietary supplement company that formulates, manufactures, and sells dietary supplements online and at dietary supplement stores.

18. ThermoLife has obtained patents on at least twenty compounds, including U.S. Patent No. 7,777,074 (the '074 Patent). (Doc. 1, Ex. A.)

19. The '074 Patent was issued by the United States Patent and Trademark Office on August 17, 2010. (*Id.*)

20. The '074 Patent protects and covers amino acid compounds, including creatine nitrate. (*Id.*)

21. The '074 Patent is a valid and enforceable patent that provides ThermoLife the exclusive right to manufacture, sell, and advertise creatine nitrate. (*Id.*)

22. Defendants have manufactured and sold products that infringe upon the '074 Patent.

23. Defendant Ergogenix advertised its product, Ergo Pump ("the infringing product"), as containing creatine nitrate. (*Id.*, Ex. B.)

24. Ergogenix's Ergo Pump contains creatine nitrate which infringes upon the '074 Patent.

25. On June 22, 2011, ThermoLife's President, Ron Kramer, spoke with representatives of Ergogenix to inform them that their Ergo Pump product infringed upon

- 4 -

1  the '074 Patent. (Doc. 18, Ex. 1.)

2      26.    Mr. Kramer was informed that Ergogenix had obtained creatine nitrate from Sci Labs.

4      27.    Mr. Kramer contacted Sci Labs to inform Sci Labs that it infringed upon the '074 Patent. (*Id.*)

6      28.    Sci Labs' President, Paul Edalat, informed Mr. Kramer that it would not stop manufacturing and selling Ergo Pump. (*Id.*)

8      29.    On July 1, 2011, counsel for Sci Labs, Charles Menzies, contacted ThermoLife's counsel via telephone. During the conversation, Mr. Menzies indicated that Sci Labs "simply screwed up." In an email on July 6, 2011, Mr. Menzies, on behalf of Sci Labs, stated:

> We simply manufactured the product and as I stated in the scope of settlement discussions, which these are, the mistake was ours not Ergogenix. My understanding is 1,000 units were manufactured and not a single unit sold. At this point, all units are being sent back to Sci Labs to be re-labeled with Creatine HCL instead of Creatine Nitrate. We would have included creatine nitrate but your client refuses to sell to Sci Labs now—so because Ergogenix is contractually obligated to have us redo the order, we need to use HCL and re-label the product. In other words, because of your client's hot head he just lost Ergogenix as a customer—who wanted your client's ingredient in good faith and believed that's what it received but for our mistake.

(Doc. 18, Ex. 3.)

    30.    Mr. Menzies provided a letter from Bryan Coy, Vice President of Sci Labs, to James Klein, President of Ergogenix, as evidence that the infringing products had been recalled. (*Id.*, Ex. 4.)

    31.    Mr. Menzies also provided a document titled "Quotation" as proof of the total amount of Ergo Pump Sci Labs manufactured. The Quotation indicates that Sci Labs manufactured and sold 2,000 units of the infringing product for a total price of $12,300.00. (*Id.*, Ex. 5.)

32. After Sci Labs informed ThermoLife that none of the infringing product had been sold, ThermoLife discovered that the infringing product was still available for purchase.

33. ThermoLife found the infringing product advertised for sale on numerous websites.

34. On July 25, 2011, four days after ThermoLife was informed that all infringing products Sci Labs manufactured had been recalled and returned, a ThermoLife employee purchased Ergo Pump from AllStarHealth.com. The product's label clearly indicates that the product still includes creatine nitrate. (*Id.*, Ex. 6.)

35. On July 28, 2011, in order to determine whether or not this was the only infringing product that Sci Labs had not recalled, ThermoLife's counsel ordered the infringing product from AllStarHealth.com. It was delivered directly to counsel's office. The label on the product also clearly indicates that the product still includes creatine nitrate.

36. In late 2011 or early 2012, ThermoLife ordered the infringing product from a website that advertised the product for sale. On January 11, 2012, ThermoLife received the infringing product.

37. Sci Labs and Erogenix are still manufacturing and selling the infringing product.

38. The communications between ThermoLife's counsel and Sci Labs' counsel indicate that Sci Labs had full knowledge of this lawsuit.

39. ThermoLife has also presented communications with Ergogenix's counsel demonstrating that Erogenix knows about this lawsuit and refuses participate.

40. On February 7, 2012, Ergogenix's attorney sent a letter to ThermoLife's counsel stating that Ergogenix "would like to discuss settlement and what they perceive is the liability of their contracted manufacturer, Sci Labs Nutraceuticals." (Doc. 29, Ex. B.)

41. Erogengix's attorney followed that letter with an e-mail:
> I have spoken with my client. I believe we have solid evidence that would show that Sci Labs conduct with regards to Thermo was intentional and tortious, and done in direct violation of the

- 6 -

> request of my client. I am compiling this information for you now, including info on Sci Labs, the recall, the number of units produced, the number of units sold, etc. What I would like to discuss further with you is whatever agreement we can reach on my client's participation as we move forward and their liability.

(*Id.*, Ex. C.)

42. Ergogenix's attorney later stated: "I would like to discuss further the settlement of the claim against my client in exchange for proof that Sci Labs acted intentionally in violating your client's patent and in direct contradiction of my client's requests." (*Id.*, Ex. D.)

43. Although Defendants' conduct has deprived ThermoLife of its ability to calculate its damages with absolute certainty, it is clear that ThermoLife has suffered damages in excess of $12,300, the total value of Sci Labs' known sales of the infringing products.

44. Defendants had knowledge of the '074 Patent.

45. Defendants continued to sell the infringing product after notice of infringement. Defendants have also attempted to conceal their continued infringement. Sci Labs counsel stated that all of the infringing products had been recalled and none had been sold. This statement was proven false by ThermoLife's investigation.

46. It is well-known in the supplement community that ThermoLife is the exclusive supplier of creatine nitrate.

47. Defendants' infringement of the '074 Patent has harmed ThermoLife's goodwill and business reputation.

48. ThermoLife's goodwill and business reputation will continue to suffer harm unless and until the Defendants' infringement is enjoined.

49. Barring Defendants' infringement, ThermoLife will be the exclusive supplier of the patented technology and products that incorporate the patented technology.

50. ThermoLife has incurred reasonable attorneys' fees litigating this matter in the amount of $20,010.00, plus the attorneys' fees incurred in connection with the March 13, 2012 hearing, which ThermoLife estimates at $2,500.00.

51. ThermoLife has incurred recoverable costs in this matter of $1,177.73.

**Conclusions of Law:**

1. Because Defendants defaulted, the factual allegations in the Complaint are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Personal jurisdiction exists because Defendants advertise, market, and distribute the infringing product throughout the United States, including in Arizona, such that they have "minimum contacts" with the forum state and "the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

3. ThermoLife is entitled to default judgment under *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

4. The '074 Patent is a valid and enforceable patent.

5. Defendants have infringed the '074 Patent.

6. As a result of Defendants' infringement, ThermoLife has suffered harm and it is entitled to "adequate compensation." *See* 35 U.S.C. § 284 (1988).

7. The Defendants have elected not to appear and defend despite having full knowledge of this lawsuit. The default was not due to excusable neglect.

8. As a result of Defendants failure to appear in this action, ThermoLife has been deprived of its ability to know the extent of Defendants' infringement.

9. ThermoLife has demonstrated that Defendants sold in excess of $12,300 of the infringing product and ThermoLife has suffered damages in excess of $12,300. Given the potential damages that have been suffered here, an award of $12,300 represents a nominal award to ThermoLife.

10. The Court awards $12,300 to ThermoLife in damages to ThermoLife, which may be collected jointly and severally against the Defendants.

11. Treble damages are available "where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (C.A.Fed. 1992). Defendants' infringement is willful. They had notice of the patent and infringed the patent without a good faith argument why their actions were legal. Further, Defendant Sci Labs has continued to sell the infringing product after notice of its infringement. Sci Labs has also attempted to conceal its continued infringement and has falsely stated that all of the infringing products had been recalled and none had been sold. Accordingly, an award of treble damages is appropriate against Defendants, including Sci Labs. *See* 35 U.S.C. § 284. The damage award of $12,300 is, therefore, trebled to $36,900.

12. Attorneys' fees may be awarded in "exceptional cases." 35 U.S.C. § 285. It is ThermoLife's burden to show by clear and convincing evidence that the case is exceptional. *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed.Cir. 2009).

13. ThermoLife has met its burden of showing that the case is exceptional. Where the defendant has willfully infringed the patent, the case is generally considered exceptional. *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir. 1986). The case is also exceptional because Defendants have refused to appear and defend. *See Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D.Cal 1997) ("case may be deemed 'exceptional'—and merit an award of attorney fees under the Lanham Act—when a defendant disregards the proceedings and does not appear").

14. The Court has reviewed ThermoLife's attorneys' fees and determined that they are reasonable. Accordingly, the Court awards ThermoLife attorneys' fees in the amount of $22,510.00.

- 9 -

15.     Under Federal Rule of Civil Procedure 54(b), costs are awarded to the successful party. The Court has reviewed ThermoLife's request for costs and awards ThermoLife costs in the amount of $1,177.73.

16.     ThermoLife is entitled to a permanent injunction under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006).

17.     ThermoLife has shown that Defendants have infringed its patent. ThermoLife will suffer irreparable harm to its goodwill and business reputation if Defendants' infringement continues. An injunction will not cause an undue burden to Defendants and the public interest will not be disserved by a permanent injunction.

Accordingly,

**IT IS ORDERED** that ThermoLife's applications for entry of default judgment against Defendants Sechel Holdings, Inc., 7129211 Canada, Inc., and Sci Labs Nutraceuticals, Inc. (Docs. 23, 24) are granted.

**IT IS FURTHER ORDERED** that ThermoLife's application for default judgment against SciLabs Nutraceuticals (Doc. 9) is denied as moot.

**IT IS FURTHER ORDERED** that Judgment is entered in favor of ThermoLife against Defendants Sechel Holdings, Inc., 7129211 Canada, Inc., and Sci Labs Nutraceuticals, Inc., jointly and severally, in amount of $60,587.73. The judgment consists of damages of $12,300.00 for Defendants' infringement, trebled to $36,900.00 under 35 U.S.C. § 284; attorneys' fees in the amount of $22,510.00 under 35 U.S.C. § 285; and costs in the amount of $1,177.73 under Federal Rule of Civil Procedure 54(b). The judgment shall earn interest at the annual federal rate from the date of entry of this judgment until paid in full.

**IT IS FURTHER ORDERED** that Defendants, their agents, officers, directors, employees, attorneys, successors and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, including customers and distributors, are permanently enjoined from:

1.     Continuing acts of infringement upon the '074 Patent;

- 10 -

2. Making, using, selling and/or importing products that infringe the '074 Patent, to include any colorable imitation thereof; and

3. Otherwise infringing upon Plaintiff's patents.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 28th day of March, 2012.

Paul G. Rosenblatt
United States District Judge